UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SATBINDER ATHWAL, individually and on behalf of the Estate of HARKANWAL SIGNH ATHWAL, deceased,<br><br>Plaintiff,<br><br>v.<br><br>JAY NIJJER and "JANE DOE" NIJJER, individually and as a marital community,<br><br>Defendants,<br><br>and<br><br>INDIGO HOLDINGS, LLC, a Washington limited liability company,<br><br>Nominal Defendant. | NO.<br><br>COMPLAINT AND JURY DEMAND |

Plaintiff SATBINDER ATHWAL, individually and on behalf of the Estate of HARKANWAL SIGNH ATHWAL, deceased, states and alleges the following:

## I. PARTIES

1.1 Plaintiff SATBINDER ATHWAL ("Sally") is a single individual residing in California. Sally was the spouse of Harkanwal Singh Athwal ("Hark"). Upon the death of Hark, Sally became de facto member of Indigo Holdings, LLC.

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1.2     Defendant JAY NIJJER ("Defendant") is believed to be a resident of Renton, Washington. Defendant is and was at all relevant times a manager-member of Indigo Holding, LLC. All acts and/or omissions alleged herein were done individually and on behalf of his marital community with "Jane Doe" Nijjer.

1.3     Defendant INDIGO HOLDINGS, LLC ("Indigo") is a Washington limited liability company that was formed in April 2012. Indigo is a nominal party to this litigation.

## II. VENUE AND JURISDICTION

2.1.    This Court has personal jurisdiction over each of the Defendants because the Defendants unequivocally consented to jurisdiction in the state of Washington in Indigo's operating agreement. In addition, Defendant Jay Nijjer holds himself out as Indigo Holdings, LLC's registered agent at the Washington limited liability company's registered address of 355 Zillah Place SE, Renton, Washington, 98509.

2.2.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332. There is diversity between the parties and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

2.3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because this is a judicial district in which all Defendants reside or conduct business.

## III. FACTS

### A. FORMATION AND OPERATION OF INDIGO HOLDINGS, LLC

3.1     In April 2012, Hark and Defendant formed Indigo and became the manager-members of the company. At Indigo's formation, Hark made a capital investment of one hundred and seventy five thousand dollars ($175,000), and Defendant made a capital investment of two hundred thousand dollars ($200,000).

3.2     Hark had previously invested two hundred forty seven thousand dollars ($247,000) to purchase another hotel that Indigo has/had an ownership stake in.

COMPLAINT AND JURY DEMAND - 2

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6042301.5

3.3     Hark and Defendant each had a 50% ownership interest in Indigo. Both members had equal control in the business and jointly made business decisions after consulting one another.

3.4     At the time of formation, Indigo had a business and real estate ownership in three different businesses that Hark and Defendant jointly operated.

3.5     Indigo owned a 30% ownership interest in TNB Hospitality LLC, an Idaho LLC which owns Candlewood Suites Hotel located in Boise, Idaho.

3.6     Indigo owned a 65% ownership interest in Cornerstone Global Marketing, LLC a South Dakota LLC.  Cornerstone created and sold biodegradable water bottles.  This business was later shut down due to lack of profitability.

3.7     Indigo owned a 25% ownership interest in CWS Meridian LLC an Idaho LLC which owns Candlewood Suites Hotel located in Meridian, Idaho.

3.8     From April 2012 to November 2014, Hark and Defendant jointly oversaw the day-to-day operations of Indigo and the businesses it owned.

3.9     Hark received nightly audit reports ("Nightly Audit Reports") concerning Indigo's hotel operations that provided details about how many rooms had been booked, the gross income for the day, funds collected, balances owed, and guest names.

**B.  DEFENDANT NIJJER'S REFUSAL TO MEET WITH SALLY TO DISCUSS THE BUSINESS AND REFUSAL TO PROVIDE BUSINESS RECORDS.**

3.10    On November 22, 2014, Hark passed away.  Hark had been helping his niece prepare for her driver's test that was scheduled for the following week because her parents were visiting family in India.  As they were finishing the short driving lesson and were returning home, Ashley mistimed a left turn causing the passenger side of the car where Hark was seated to be broadsided by an oncoming SUV. Upon contact, Hark went into cardiac arrest and passed away on the scene.

COMPLAINT AND JURY DEMAND - 3

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6042301.5

3.11 At the time of his passing, Hark worked for the National Hockey League's Vancouver Canucks as the Director of Premium Client Sales and Service and also owned and operated Indigo with Defendant.

3.12 Hark was survived by his wife Sally and their two children, Sarina Athwal, six years old and Evan Athwal, four years old. Sally was a full-time stay-at-home mother.

3.13 Hark's employment and income from Indigo were the family's only two sources of income, so Indigo became the only way Sally could support herself and her two children.

3.14 While Hark was alive, Hark kept her informed at all times about Indigo's operations and profitability and often sought her opinion on business decisions.

3.15 After Hark's passing, Sally asked Defendant to get her up to speed on Indigo, so that she could take over Hark's business duties.

3.16 Defendant assured her that as Hark's business partner and childhood best friend, he had her and her children's best interest in mind.

3.17 Defendant further assured Sally that he would make sure that Sally's business interest was protected and he would keep her apprised about the business and its profitability.

3.18 After Hark's passing, Defendant stopped providing the Nightly Audit Reports for the hotels.

3.19 Without these reports, Sally had no way of determining how the business was doing. Her questions to Defendant about the business often went unanswered. On the few occasions that Defendant did respond to Sally's questions, he provided only vague generalities that lacked substantive information.

3.20 On February 24, 2015, Sally contacted Defendant to request the 2014 Indigo tax returns she needed to file her personal tax returns.

COMPLAINT AND JURY DEMAND - 4

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6042301.5

3.21    Defendant stated that the business accountant was still working on the returns, but he would send her copy after they had been prepared.  However, that promise went unfulfilled for nearly seven months.

3.22    Sometime in 2015, Defendant allegedly filed for a filing extension for the 2014 Indigo tax returns with the IRS, but did not disclose this to Sally.

3.23    Sally was forced to continue requesting the business tax returns and eventually file for an extension for her own personal returns because Defendant failed to provide any information about the status of the business tax returns despite Sally's numerous queries.

3.24    On April 27, 2015, Sally contacted Defendant to request a face-to-face meeting with Defendant so that she could gain a better understanding of Indigo's finances.  Defendant responded seeking to talk via telephone.

3.25    During the call, they agreed to meet in person in May 2015, so that Sally's father and sister would be able fly up from California to attend the meeting.  Sally's father and sister were helping get Sally's affairs back on track after Hark's death while Sally devoted most of her time tending to her children.

3.26    Defendant requested that the meeting take place at Hark's parents' home in British Columbia, Canada so that Hark's parents and brother could be present.

3.27    Sally accommodated this request out of respect to her in-laws even though they were not members of Indigo.

3.28    After Sally's father and sister had arrived in Canada for the meeting, Gurminder, Hark's brother, notified Sally that Defendant said he had to go to Las Vegas, and would not attend the meeting to discuss Indigo.

3.29    Defendant did not ever contact Sally to notify her that he was going to cancel and/or not attend the previously scheduled May meeting.

COMPLAINT AND JURY DEMAND - 5

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6042301.5

3.30     Consequently, the May 2015 took place without the Defendant present. Sally took the opportunity to explain to her in-laws that Defendant had completely closed her off from the business and that she had not received any income from the business making it difficult for her to provide for her children. Gurminder revealed that Defendant had actually been sending him the Nightly Audit Reports instead. This admission was surprising because Sally had on multiple occasions requested Defendant send her the reports, but he refused.

3.31     Gurminder is not and has never been a member of Indigo.

3.32     Consequently, Gurminder was not entitled to receive the Nightly Audit Reports in lieu of Sally or on Sally's behalf.

## C. DEFENDANT NIJJER'S STALL TACTICS CONTINUE IN RESPONSE TO REQUESTS MADE BY SALLY'S ATTORNEYS AND ACCOUNTANT.

3.33     Defendant's pattern of giving empty promises and refusing to provide any company records or financial statements extended to Sally's accountants and attorneys, who sought the financial records to carry out Sally's personal affairs.

3.34     On February 17, 2015, Ray Bryant, a British Columbia lawyer, who was also Sally and Hark's long-time friend, emailed Defendant to request Indigo's records so that Mr. Bryant could settle Hark's estate.

3.35     Defendant provided no documents in response to Mr. Bryant's email.

3.36     On May 15, 2015, Mr. Bryant followed up again with Defendant to request Indigo's records. Defendant again did not provide any company records.

3.37     On June 11, 2015, Mr. Bryant again emailed Defendant to request the Indigo records, but Defendant did not provide any details via email and instead stated that he sought to communicate via telephone.

3.38     However, the phone calls with Defendant were unproductive, and Defendant did not provide any information or documents relevant to Mr. Bryant's questions.

COMPLAINT AND JURY DEMAND - 6

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6042301.5

3.39     On June 12, 2015, Sally again emailed Defendant to set up another meeting to discuss Indigo's operations.

3.40     Despite failing to show up for the May 2015, Defendant responded he had very limited availability to meet with Sally in June and instead suggested going through Sally's in-laws to discuss the business.

3.41     Sally further advised Defendant to respond to Mr. Bryant's requests for information, which remained unfulfilled.

3.42     On June 17, 2015, Mr. Bryant once again emailed Defendant to inform him that Indigo's financial information was necessary in order to settle Hark's estate.

3.43     Defendant's responses to Mr. Bryant's prior emails were only via telephone, and Defendant refused to provide any information in writing.

3.44     Mr. Bryant further advised Defendant that further calls between the two were not necessary until Defendant provided the Indigo financial records.

3.45     In response, Defendant stated that he did not have Indigo tax returns, and further stated that he was not going to give Mr. Bryant any further information and told Mr. Bryant to stop contacting him.

3.46     In late June 2015, Sally and Defendant finally met to discuss the business.

3.47     Defendant provided no substantive details about the business but revealed that the 2014 Indigo taxes had been filed using Hark's personal information and social security number, without any mention of his death or the creation of his estate in the tax returns.

3.48     In July 2015, without having a source of income since Hark's passing, Sally was forced to move to California for family support.

3.49     Since returning to California, Sally's personal accountant has repeatedly requested information concerning Indigo from Indigo's business accountant.

COMPLAINT AND JURY DEMAND - 7

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6042301.5

3.50   Under Defendant's instructions, Indigo's business accountant has provided the same unfiled sham returns Sally already had in her possession.

3.51   Defendant still has not provided the information about Indigo Sally initially requested in April 2015.

3.52   March 14, 2017, Sally again requested Indigo's records, including:

   a. All financial statements of Indigo for the three most recent years;
   b. Indigo's federal, state, and local tax returns and reports for the three most recent years;
   c. Accounting records such as general ledger, income statement, balance sheet, trial balance, and cash flow statement of Indigo for the three most recent years;
   d. Accounting records relating to any distributions received by a member or contributions a member made to Indigo in the past three years; and,
   e. Records of all "loans", "temporary withdrawals", and other instances in past three years where funds have been borrowed from Indigo to be repaid later.

3.53   On March 27, 2017, Defendant emailed Indigo's 2014 and 2015 federal tax returns, but submitted none of the other information Sally was entitled to as a member.

3.54   On March 31, 2017, Sally sent a second correspondence requesting the outstanding documents. Although Defendant responded on April 3, 2017, noting that he "working on it", he has provided no documents beyond the 2014 and 2015 Indigo federal tax returns.

**D. DEFENDANT NIJJER PROVIDES FALSE, UNFILED TAX RETURNS WITH INACCURATE INFORMATION.**

3.55   Defendant's unresponsiveness and refusal to provide documentation also harmed Sally's personal interest because she was not able to file personal tax returns until she

COMPLAINT AND JURY DEMAND - 8

received the business tax returns for Indigo.  Because Sally did not have access to any of the Indigo financial documents, she relied exclusively on Defendant to ensure accurate information was being provided so that she could file her state and federal personal and business tax returns.

3.56   The Indigo tax returns Defendant provided were unsigned and unfiled.

3.57   Sally has not been able to determine whether or not the returns have ever been filed or if Defendant is providing true and correct copies of the returns.

3.58   The Indigo returns Defendant provided represent distributions for amounts that were never made.

3.59   For example, Indigo's 2015 Schedule K1s state that Sally received $70,000.  However, she did not receive any funds in 2015 or 2016.

3.60   On January 24, 2017, $49,000 was deposited into Hark and Sally's bank account.  It is unclear exactly what this amount is supposed to represent.

3.61   Then on March 7, 2017, Sally received another deposit into her personal checking account of $20,000.  It is unclear exactly what this amount is supposed to represent.

3.62   Defendant provided no explanation as to what period the two payments covered.

3.63   Defendant has refused to provide Sally with the 2016 Indigo tax returns, so she cannot determine if that payment is a part of the outstanding portion for 2015 or if it is the 2016 distribution.

3.64   Defendant has repeatedly said the money earned from Indigo is being reinvested in the business for various property upgrades and improvements.  Such alleged reinvestments were without Sally's knowledge and/or approval.

3.65   Defendant has not provided any invoices, receipts, or documents of any sort to verify the alleged upgrades and improvements.

COMPLAINT AND JURY DEMAND - 9

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6042301.5

3.66   Indigo's 2014 taxes were prepared using Hark's name and social security number.  The tax returns did not disclose Hark had passed away in November 2014, and did not properly indicate the attached Schedule K1 was Hark's final K1 as required by the IRS. Defendant has not provided any confirmation the taxes were filed in accordance with IRS requirements.

3.67   Hark's Schedule K1s for 2014 state that his business distribution were $91,629. However, in 2015, Sally received $0, and in 2016, Sally received $0.  It is unclear what happened to these funds, but as Defendant was in sole control of them, his retention, management, reinvestment, or otherwise use or possession of such funds is wrongful and to th detriment of Sally.

3.68   This drastic reduction in distribution income which Defendant has not explained suggests that he is withholding or has misappropriated company funds Sally is entitled to.

3.69   Defendant knew that Sally was relying on the information that he provided, and he also knew that Sally had no way of confirming the accuracy of the information he provided.

3.70   Over the past 29 months, Sally has not been provided this critical information. Consequently, she has been forced to incur expenses that are directly attributable to Defendant's conduct.

3.71   Defendant's failure to provide complete information the subsequent inconsistencies between the tax return distribution amounts and the amounts Sally actually received gives Sally reason to believe these red flags demonstrate Defendant has misappropriated company funds since November 2014, and he has not paid Sally her true share of business earnings.

COMPLAINT AND JURY DEMAND - 10

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6042301.5

*E. DEFENDANT NIJJER INSTRUCTED INDIGO'S BUSINESS ACCOUNTANT TO LEAVE PLAINTIFF AND PLAINTIFF'S ACCOUNTANT IN THE DARK ABOUT THE BUSINESS.*

3.72    After Hark's passing, Defendant has had exclusive control over Indigo, its day-to-day functions, including employment decisions, advertising decisions, ordering supplies, retaining business accountants and bookkeepers to maintain the records.

3.73    Defendant directed Indigo's business accountant not to provide Sally with any of the business records

3.74    Defendant has instructed the accountant to not provide Sally or Sally's representatives with the information they request.

3.75    Sally's personal accountant and attorneys have made multiple attempts to request company records but they have only been given the unsigned and unfiled business tax return. .

*F. DEFENDANT NIJJER'S ACTIONS EXPOSE PLAINTIFF TO IRS PENALTIES*

3.76    As a result of Defendant's failure to inform Sally of the company finances and failure to provide company records for the past 29 months, Sally was forced to incur IRS filing fees and accountant expenses, and stands to incur future expenses for IRS interest fees and late filing fees in an amount to be determined.

3.77    Plaintiff seeks disgorgement of all ill-gotten gains from the unlawful conduct set forth in this Complaint, together with prejudgment interest, civil penalties, and such other relief as the Court may deem appropriate.

I. **FIRST CAUSE OF ACTION**
(Breach of Contract)

4.1    Plaintiff realleges and incorporates herein paragraphs 1.1 through 3.77.

COMPLAINT AND JURY DEMAND - 11

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6042301.5

4.2	As a direct and proximate result of Defendant's actions and/or omissions described herein, Defendant is in material breach of contract, which has damaged Sally in her capacity as estate representative and/or as defacto member in Indigo in an amount to be proven at trial, plus prejudgment interest, attorney fees and costs.

## II.  SECOND CAUSE OF ACTION
### (Violation of RCW 25.15 *et seq.*)

5.1	Plaintiff realleges and incorporates all prior allegations in this complaint.

5.2	As a direct and proximate result of Defendant's actions and/or omissions described herein, Defendant has violated RCW 25.15 *et seq*, which has caused damage in an amount to be proven at trial, plus prejudgment interest, attorney fees and costs.

## III.  THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty)

6.1	Plaintiff realleges and incorporates all prior allegations in this complaint.

6.2	Defendant's actions and/or omissions described herein constitute breach of Defendant's fiduciary duties owed to the estate, and as a direct and proximate result of such actions and/or omissions, the estate and hence that, Plaintiff, has been damaged in an amount to be proven, plus prejudgment interest, attorney fees and costs.

## IV.  FOURTH CAUSE OF ACTION
### (Derivative Action Claim for Expenses)

7.1	Plaintiff realleges and incorporates all prior allegations in this complaint.

7.2	This action has been brought pursuant to RCW 25.15 *et seq.* and as such an award of reasonable expenses, including reasonable attorneys, associated with this action is requested.

## V.  FIFTH CAUSE OF ACTION
### (Wrongful Interference in a Business Relationship and/or Contractual Expectancy)

8.1	Plaintiff realleges and incorporates all prior allegations in this complaint.

COMPLAINT AND JURY DEMAND - 12

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6042301.5

8.2     As a direct and proximate result of Defendant's actions and/or omissions described herein, Defendant has wrongfully interfered in either Sally's or the estate's business relationship and/or expectancy, which has caused damage in an amount to be proven at trial, plus prejudgment interest, attorney fees and costs.

## VI.  SIXTH CAUSE OF ACTION
### (Fraudulent Misrepresentation)

9.1     Plaintiff realleges and incorporates all prior allegations in this complaint.

9.2     As a direct and proximate result of Defendant's actions and/or omissions described herein, Defendant has fraudulently misrepresented the company finances and the accuracy of the business tax returns, which has damaged Sally as well as the estate in an amount to be proven at trial, plus prejudgment interest, attorney fees and costs.

## VII.  SEVENTH CAUSE OF ACTION
### (Declaratory Judgment and Injunctive Relief)

10.1    Plaintiff realleges and incorporates all prior allegations in this complaint.

10.2    Pursuant to 28 U.S.C. §2201, Plaintiff seeks a declaratory judgment adjudging the parties' rights and responsibilities owed to each other pursuant to Indigo's operating agreement and applicably Washington law regarding the operation of LLCs.

10.3    Additionally, Plaintiff seeks positive injunctive relief against Defendant ordering him to provide all necessary financial information and to keep Plaintiff informed at all times as to the performance and condition of the parties' business.

## VIII.  JURY DEMAND

Plaintiff hereby demands a jury trial on all issues triable by a jury.

## IX.  PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for the following relief, which includes the right of trial by jury pursuant to Fed.R.Civ.P. 38(b):

COMPLAINT AND JURY DEMAND - 13

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6042301.5

1    A.    Judgment against Defendant Jay Nijjer, individually and his marital community, in an amount to be proven, plus prejudgment interest, attorney fees, and costs all as authorized by law, and/or RCW 4.84 *et seq.*;

B.    Defendants be required to provide all company financial records dating back to November 1, 2014 to present;

C.    Defendant Nijjer be permanently enjoined from preventing or restricting Sally's right to obtain company records directly from Defendant or from Indigo's accountants and/or attorneys; and,

D.    For such other and further relief as the Court deems just and equitable.

DATED this 11th day of May, 2017.

```
                                s/ Daniel A. Brown
                                s/ S. Shawn Toor
                                Daniel A. Brown, WSBA #22028
                                S. Shawn Toor, WSBA #50108
                                Attorneys for Plaintiff
                                WILLIAMS, KASTNER & GIBBS PLLC
                                601 Union Street, Suite 4100
                                Seattle, WA 98101-2380
                                Telephone: (206) 628-6600
                                Fax: (206) 628-6611
                                dbrown@williamskastner.com
                                stoor@williamskastner.com
```

COMPLAINT AND JURY DEMAND - 14

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6042301.5